JANVIER, Judge.
The automobile collision from which this suit results took place at about 5:20 o’clock in the late afternoon on March 23, 1950, in the intersection of Magazine and Julia Streets, in New Orleans. The weather was clear; the streets were dry.
A 1935 Plymouth sedan, belonging to Marshall L. Casse, Jr., and driven by his wife, was on Julia Street going in a direction away from the Mississippi River. With Mrs. Casse in the car were her two young sons, Larry Dee Casse, age two and .a half years, and Marshall Casse, age six and a half years. The other vehicle was a taxicab of Nola Cabs, Inc., which was being driven on Magazine Street in an uptown direction by Thomas Davis, Jr. In the taxicab were three passengers, who have since disappeared, and who, in spite of efforts of the taxicab company, could not be located and produced as witnesses.
On Magazine Street traffic was permitted to operate only in an uptown direction which is in the direction in which the cab was going. Counsel for all parties say that they do not know, and the record does ■not show, whether at that time Julia Street was a one-way street, but they think that it was and that traffic on it was permitted to operate only away from the river, which was the direction in which the Casse car was being operated.
Both cars were damaged and Mrs. Casse and Larry Dee Casse sustained physical injuries. Mr. and Mrs. Casse, each individually, and Mr. Casse, also for the use and benefit of his minor son, Larry Dee Casse, brought this suit against Thomas Davis, Jr., the operator of the cab, and Nola Cabs, Inc., Mrs. Casse praying for judgment for $10,749.40 for her personal injuries.
Included in the claim of Mrs. Casse were two items — -$261.90, the cost of repairing the car, and $7.50, the cost of towing that car from the scene of the accident. In oral argument counsel for plaintiffs concede that these claims should be withdrawn since they were made by Mrs. Casse although the car actually belonged to the community of which Mr. Casse, as husband, was head and master.
Mr. Casse prays for judgment for $10,-572 of which $47.50 represents the cost of medical treatment made necessary by the injury of the young boy, and the remainder of which was prayed for on behalf of the boy for his physical injuries, etc.
There was judgment dismissing all claims and all plaintiffs have appealed de-volutively.
The record leaves no doubt at all as to the facts. In spite of the testimony of Mrs. Casse, it is made certain that she, on Julia Street, on approaching the intersection did not stop and did not look with any care at all in the direction from which the taxicab was approaching and was about to enter the intersection. She says that she stopped and looked carefully and that, though she saw a bus of the New Orleans Public Service standing at the curb of Magazine Street, she saw no other vehicle.
It is also made certain that the taxicab was being operated at a speed of between 15 and 20 miles an hour and that it entered the intersection from the right of Mrs. Casse which, since neither street had priority over the other, entitled Davis to the right of way. It is also certain that, when the car was near the center of the intersection, it was struck on its left front fender and door by the front of the car driven by Mrs. Casse, and that the Casse *543 car, after striking the taxicab, continued across the intersection and crashed into an iron pole on the upper lake corner of the intersection. All of this is made evident by the physical facts and by the testimony of George S. Traub, the operator of a bus of the New Orleans Public Service, Inc., which was standing at the Curb of Magazine Street waiting for the taxicab to pass to its left.
There is no doubt at all as to the negligence of Mrs. Casse. She entered the intersection without carefully looking and, according to the operator of the bus, at a speed in excess of that at which the taxicab was being operated, which the record shows was about IS or 20 miles an hour.
Since there was negligence on the part of Mrs. Casse, and since, without that negligence, there would have been no accident, she herself cannot recover for her injuries.
Our only concern is over the claim made on behalf of the minor who was a passenger in the car driven by his mother and to whom the negligence of the mother may not be imputed.
Our concern arises from the fact that, though we find no other fault in Davis, the driver of the taxicab, it is conceded that he was operating the taxicab at a speed slightly in excess of 15 miles an hour which, according to the traffic ordinance, was the maximum at which he should have approached the intersection since the intervening corner was what is known as a blind corner, his view being obstructed by a building which extended to the property line of both streets.
Our attention is directed to the fact that in such situation the City Ordinance, Article V, 3(b), provides that it shall be unlawful to drive at a speed in excess of
"Fifteen miles an hour except on Boulevards and through streets, when approaching within fifty feet of and in traversing an intersection when the operator’s view is obstructed. * * ”
Counsel for plaintiffs direct our attention to a further provision found in Article VII of the Ordinance which is controlling where a vehicle passes a standing streetcar. This provision reads as follows :
“On one-way streets, vehicles may pass to the left of a stopped street car, but only at a greatly reduced speed.”
From this it is argued on behalf of plaintiffs that since, at a blind intersection, the speed must be reduced to 15 miles an hour and since a standing streetcar, (and we add or bus) may be passed “only at a greatly reduced speed” the speed of the taxicab should have been substantially less than 15 miles an hour. We are not at all certain that the framers of the Ordinance so intended.
The interpretation which we place upon the Ordinance is that, in a situation where a standing streetcar is passed, the speed of the passing vehicle must be greatly reduced, but we do not believe that both the quoted provisions of the articles are applicable at the same time and that the articles mean that in such a situation the speed must be reduced to 15 miles an hour because of the obstruction of the view of the operator, and must be additionally greatly reduced because of the standing streetcar or bus. But whether our interpretation is correct or not, we think that the speed of the taxicab, which was a few miles in excess of that permitted by the ordinance, played no part in the occurrence of the accident. The provision of the ordinance already quoted concerning the passing of a standing car at a greatly reduced speed was inserted for the protection of persons leaving or entering such a stationary car and not for the protection of the drivers of other vehicles on intersecting streets crossing ahead of such standing streetcars or busses.
*544 The slightly excessive speed of the taxicab had no causal connection whatever with the ensuing accident. The sole and only cause was the negligence of Mrs. Casse in driving her car into the intersection into the side of the taxicab which had entered first and which could have easily continued across had she been in any way attentive.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.